IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

CAROLINE B. REYNOLDS, ALISON W. )
REYNOLDS, AND PAIGE A. REYNOLDS, )
Individually and as Administrator of the )
Estate of John Paul Reynolds, )
)
      Plaintiffs, )
)
v. )   Civil Action No. 3:22-cv-577–HEH
)
USAA LIFE INSURANCE COMPANY, )
)
      Defendant. )

## MEMORANDUM OPINION
(Granting Defendant's Motion to Dismiss as to Counts II, III, and IV)

This matter is before the Court on Defendant USAA Life Insurance Company's ("Defendant" or "USAA") Motion to Dismiss (the "Motion") pursuant to Federal Rule of Civil Procedure 12(b)(6) filed on September 1, 2022. (ECF No. 11.) Plaintiffs Caroline B. Reynolds, Alison W. Reynolds, and Paige A. Reynolds, individually and as Administrator of the Estate of John Paul Reynolds (the "Insured") (collectively "Plaintiffs"), filed a four-count Complaint against Defendant on July 28, 2022, in the Henrico County Circuit Court regarding a life insurance policy (the "Policy" or "Policy Agreement") purchased by the Insured. (Compl., ECF No. 1-1.) On August 26, 2022, Defendant removed Plaintiffs' civil action to this Court pursuant to 28 U.S.C. § 1441. (Notice of Removal at 3, ECF No. 1.) The Complaint alleges breach of contract for failure to pay policy death benefit proceeds (Count I), negligence for failure to properly

advise (Count II), constructive fraud and fraudulent inducement (Count III), and unjust enrichment (Count IV). (Compl. at ¶¶ 19–40.)

First, Defendant seeks to dismiss Counts II and III, arguing that Plaintiffs failed to allege facts sufficient to establish separate tort claims that are distinct from their breach of contract claim and that the tort claims are also barred by Virginia's economic loss rule. (Def.'s Mem. in Supp. at 2, ECF No. 12.) Second, Defendant seeks to dismiss Count IV, asserting that Plaintiffs' unjust enrichment claim is precluded by the existence of the Policy Agreement and if not precluded, Plaintiffs still failed to establish the essential elements of an unjust enrichment claim. (*Id.*)

The parties have submitted memoranda in support of their respective positions. The Court will dispense with oral argument because the facts and legal contentions have been adequately presented to the Court, and oral argument would not aid in the decisional process. *See* E.D. Va. Local Civ. Rule 7(J). For the reasons that follow, Defendant's Motion to Dismiss will be granted.

## I. BACKGROUND

Viewed in the light most favorable to Plaintiffs and taking all allegations in the Complaint as true, the facts are construed as follows for the purpose of resolving the Motion to Dismiss. On November 4, 2010, USAA issued a $1,000,000 twenty-year level term life insurance policy (Policy No: M853098160) to John Paul Reynolds.[1] (Compl. at

---

[1] The Policy agreement contains a choice-of-law provision that states, "[t]his policy will be governed by the laws of the state in which it is delivered." (Policy Agreement at 20, ECF No. 1-1.) As far as the Court is aware, the Policy was delivered in Virginia. "Virginia law looks favorably upon choice-of-law clauses in a contract, giving them full effect except in unusual

2

¶ 3.) The Insured designated Paige A. Reynolds ("Paige") as the Policy beneficiary. (*Id.*) The Policy Agreement required monthly payments by the Insured of $127. (*Id.* at ¶ 4.)

The Insured and Paige married on September 26, 1998, and had two children, Caroline B. Reynolds and Alison W. Reynolds. (*Id.* at ¶ 5.) On October 21, 2018, the Insured and Paige divorced, and their Property Settlement Agreement required the Insured to continue the Policy Agreement with Paige, Caroline, and Alison as designated beneficiaries. (*Id.* at ¶ 6.) The Insured carried the Policy without interruption for nearly ten years. (*Id* at ¶ 10.)

According to the Policy Agreement, coverage will end at the earliest of the following events: (1) death of the insured; (2) the grace period ends without receipt of required payment; (3) the policy is exchanged for a new policy; or (4) the expiration date of the policy. (Policy Agreement at 21.) The Policy provides for a "31-day grace period after the premium due date to pay each premium," and the Policy will remain "in effect during any grace period, unless terminated under another policy provision." (*Id.*) In the spring of 2020, in response to the significant health and economic damage caused by COVID-19, USAA offered relief to its members through different measures, which included "cessation of policy 'cancellations for non-payment' and extended grace periods." (Compl. at ¶ 7.)

---

circumstances." *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 624 (4th Cir. 1999). As no such circumstances exist here and the parties do not dispute the choice-of-law provision, the provision governs, and Virginia law will apply.

On August 17, 2020, the Insured died a resident of Henrico County, Virginia, and Paige qualified as Administrator of his Estate in the Henrico County Circuit Court. (Compl. at ¶ 8.) Thereafter, Paige demanded USAA pay the Policy death benefit proceeds, but USAA refused because they asserted the Policy was no longer active. (*Id.* at ¶ 9.) Following the refusal, Paige "requested Policy information (including conversation recordings) but USAA provided only the Policy contract." (*Id.*)

By letter dated December 30, 2020, USAA denied payment of the Policy proceeds, stating that the Insured had contacted USAA and "terminated" the Policy on August 3, 2020, which became effective as of August 4, 2020. (*Id.* at ¶ 10.) Following the termination of the Policy, Velma Rodriguez ("Rodriguez"), a customer service agent of USAA, drafted and sent a letter to the Insured detailing that USAA was canceling the Policy, effective August 4, 2020, and that USAA would no longer deduct "premium [monthly] payments of $127.89" from the Insured's bank account. (Policy Cancellation Letter at 45, ECF No. 1-1.) The Insured's last monthly premium was paid on July 4, 2020, with the next payment due on August 4, 2020. (Compl. at ¶ 13.) After USAA denied payment of the Policy death benefit proceeds, Plaintiffs filed this civil action in the Henrico County Circuit Court on July 28, 2022, which was later removed to this Court on August 26, 2022. (Notice of Removal at 1.) Plaintiffs allege that USAA's cancelation of the Policy was improper, and the Policy should have remained active at the Insured's death because it occurred during the 31-day grace period under the Policy contract. (Compl. at ¶¶ 16–17.) Accordingly, Plaintiffs assert the Policy death benefit

proceeds are payable to Plaintiffs as designated Policy beneficiaries and intended third-party beneficiaries of the Insured's USAA Policy Agreement. (*Id.*)

## II. STANDARD OF REVIEW

Defendant's Motion to Dismiss is pursuant to Federal Rule of Civil Procedure 12(b)(6). (Mot. at 1.) A Rule 12(b)(6) motion "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). "A complaint need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (alteration in original) (quoting *Tobey*, 706 F.3d at 387). However, a "complaint must provide 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Turner v. Thomas*, 930 F.3d 640, 644 (4th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Allegations have facial plausibility 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Tobey*, 706 F.3d at 386 (quoting *Iqbal*, 556 U.S. at 679). However, a court "need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *Turner*, 930 F.3d at 644 (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)).

Although a motion to dismiss tests the sufficiency of a complaint, courts may consider documents that are either "explicitly incorporated into the complaint by reference" or "those attached to the complaint as exhibits." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016) (citations omitted). A court may consider a

document not attached to the complaint, when "the document [is] integral to the complaint and there is no dispute about the document's authenticity." *Id.* at 166. "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached, . . . the exhibit prevails." *Id.* (alteration in original) (quoting *Fayetteville Invs. v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)). In considering a motion to dismiss, a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the light most favorable to the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). Legal conclusions enjoy no such deference. *Iqbal*, 556 U.S. at 678.

### III.    ANALYSIS

#### A. <u>Negligence Claim (Count II)</u>

USAA argues that Count II of Plaintiffs' Complaint should be dismissed because Plaintiffs' Complaint fails to establish a basis for a negligence claim that is distinct from their breach of contract claim. (Def.'s Mem. in Supp. at 4.) Additionally, Defendant argues that Virginia's economic loss rule also bars Plaintiffs' negligence claim. (*Id.*) Plaintiffs allege that Rodriguez, as USAA's agent, "expressly undertook to advise [the Insured] concerning the Policy and its terms, including cancellations," and in negligently advising the Insured about the Policy and its terms, breached a duty to the Insured that should be redressable separately from the underlying contract claim. (Pls.' Mem. in Opp'n at 7, ECF No. 9.)

In certain circumstances, a singular act or occurrence can support causes of action both for breach of contract and breach of a duty arising in tort. *Augusta Mut. Ins. Co. v.*

6

*Mason*, 645 S.E.2d 290, 293 (2007). However, Virginia law requires that, "'in order to recover in tort, the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract.'" *Selective Ins. Co. of the Se. v. Williamsburg Christian Acad.*, 458 F. Supp. 3d 409, 414 (E.D. Va. 2020) (quoting *Tingler v. Graystone Homes, Inc.*, 834 S.E.2d 244, 255 (Va. 2019)). Essentially, "'a tort action cannot be based solely on a negligent breach of contract.'" *Id.* Recovery in tort is limited to a "breach of a duty to 'take care for the safety of the person or property of another.'" *Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.*, 374 S.E.2d 55, 58 (Va. 1988) (internal citations omitted). Virginia's economic loss rule provides that where the plaintiff is a party to a contract and suffers purely economic loss, as opposed to damage to person or property, the remedy sought is in contract, not tort law. *See Id.* at 58. In the context of parties with contractual duties, the economic loss rule is intended to ensure that "contract damages be limited to those 'within the contemplation and control of the parties in framing their agreement.'" *City of Richmond v. Madison Mgmt. Grp., Inc.*, 918 F.2d 438, 446 (Va. 1990) (quoting *Kamlar Corp. v. Haley*, 224 Va. 699, 706 (1983)).

When considering an insurer-insured relationship, the Supreme Court of Virginia "has never recognized the existence of a separate tort duty that an insurer owes to its insured." *Selective Ins. Co.*, 458 F. Supp. 3d at 416 (internal citation omitted). Conversely, the Supreme Court of Virginia has held that an insurance agent does not have a common law duty to the insured arising out of the parties' dealings and that tort law provides redress only for the "violation of certain common law and statutory duties

7

involving the safety of persons and property . . . ." *Filak v. George*, 594 S.E.2d 610, 614 (2004). This does not mean that the insured can never assert that the insurer owed them a common law duty, however, "the insurance relationship alone does not create such a common law duty." *Selective Ins. Co.*, 458 F. Supp. 3d at 416. "'In summary, if the defendant's duty to the plaintiff arose solely from the plaintiff's contract with the insurance carrier, the economic loss rule will bar recovery.'" *Id.* (internal citations omitted).

Plaintiffs have not alleged that USAA owed the Insured a common law duty that arose outside the parties' dealings regarding the Policy, and their remedy is under contract, not tort law. Plaintiffs cite *Cincinnati Ins. Co. v. Ruch* as an example of when this Court permitted both a negligence and contract action to proceed against an insurance agent, noting that Virginia law imposes an "extra contractu" common law duty of care on professionals. 940 F. Supp. 2d 338, 345–347 (E.D. Va. 2013). However, that case differs from the case at hand in important ways. *Ruch* involved the assignment of a claim regarding the failure of an *insurance broker*, who as a broker owed a professional fiduciary duty to the property owner, to effect or place insurance on specific property as requested by the property owner. *Id.* at 340–341. The Supreme Court of Virginia has "drawn a distinction between an insurance *agent*, who acts as the agent of the insurer, and an insurance *broker*, who ordinarily is employed by the person seeking insurance." *Harris v. K & K Ins. Agency, Inc.*, 453 S.E.2d 284, 286 (1995) (emphasis added).

Here, Plaintiffs do not assert that Rodriguez was acting as an insurance broker for the Insured. As such, no common law or fiduciary duty between the Insured and

8

Rodriguez has been alleged to have existed outside the Policy Agreement. Simply stating that Rodriguez "expressly undertook to advise" the Insured does not create a distinct duty that was owed to the Insured separate from the Policy. The duties Plaintiffs allege were violated arose out of the contractual relationship between the Insured and USAA. The Supreme Court of Virginia has explained that, "the controlling policy consideration underlying tort law is the safety of persons and property . . . [t]he controlling policy consideration underlying the law of contracts is the protection of expectations bargained for." *Sensenbrenner*, 374 S.E.2d at 55. Thus, because the Policy Agreement forms the sole basis for Plaintiffs' alleged damages, Virginia's economic loss rule bars recovery under Plaintiffs' negligence claim and the remedies sought are rooted in contract law. Accordingly, the Court will grant Defendant's Motion to Dismiss as to Count II.

### B. Constructive Fraud/Fraudulent Inducement Claim (Count III)

Defendant argues that Plaintiffs' constructive fraud/fraudulent inducement claim (Count III) is also barred by Virginia's economic loss rule because "fraudulent inducement claims are barred by the economic loss rule unless the plaintiff can allege that the defendant made misrepresentations *prior* to entering into the contract at issue." (Def.'s Reply Mem. at 7, ECF No. 10 (emphasis in original).) Conversely, Plaintiffs argue that Count III is not barred by the economic loss rule because the alleged fraudulent misrepresentations or concealments made by Rodriguez "do not arise out of the Policy contract; instead, they arise from the independent duty undertaken by USAA to cancel coverage early in a manner inconsistent with the Policy terms." (Pls.' Mem. in Opp'n at 9.)

9

To establish constructive fraud, the plaintiff must prove (1) that there was a material, false representation; (2) that the hearer believed to be true; (3) that the representation was meant to be acted on; (4) that it was acted on; and (5) that damage resulted. *Nationwide Ins. Co. v. Patterson*, 331 S.E.2d 490, 492 (1985). "A finding of constructive fraud exists when one has represented as true that which is really false in such a way as to induce a reasonable person to believe it and with the intent that such person will act on the misrepresentation." *Howarth v. Rockingham Pub. Co., Inc.*, 20 F. Supp. 2d 959, 970 (1998) (internal citations omitted). However, "fraud may consist of suppression or omission of that which is true as well as the articulation of that which is false." *Id.* Nonetheless, the essence of constructive fraud is negligent misrepresentation. *See Mortarino v. Consultant Eng'g Serv.*, 467 S.E.2d 778, 782 (Va. 1996). As mentioned above, in determining whether "a cause of action sounds in contract or tort, the source of the duty violated must be ascertained." *Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.*, 507 S.E.2d 344, 347 (Va. 1998). As such, the Court must determine if the cause of the complaint is for an "act of omission or non-feasance," which without proof of the contract to describe what should have been done, "would not give rise to any cause of action []because no duty apart from [the] contract to do what is complained of exists . . . ." *See Oleyar v. Kerr*, 225 S.E.2d 398, 399–400 (1976).

Here, Plaintiffs have not sufficiently established that USAA owed the Insured any additional duty that was separate from the Policy. Plaintiffs contend that Rodriguez misrepresented or concealed from the Insured the thirty-one (31) day grace period, as provided by the Policy Agreement. (Compl. at ¶ 30.) The Insured relied on these "false

10

representations" to his detriment insofar as he allegedly terminated the Policy earlier than he otherwise would have had he known of the COVID-19 grace period. (*Id.*) On one hand, Plaintiffs claim that the misrepresentations to the Insured do not arise out of the Policy Agreement, but on the other, state that the misrepresentations arise out of "the independent duty undertaken by USAA to cancel coverage early *in a manner inconsistent with Policy terms*." (Pls.' Mem. in Opp'n at 9 (emphasis added).) Plaintiffs' allegations of constructive fraud are nothing more than allegations of negligent performance of contractual duties, which "concern[] an alleged economic loss . . . rather than the safety of persons and property, with which the common law of torts is primarily concerned." *Selective Ins. Co.*, 458 F. Supp. 3d at 417. Thus, because a tort action cannot be based solely on a negligent breach of a contract, Plaintiffs' Count III is not actionable in tort, and their constructive fraud claim is barred by the economic loss rule. Therefore, the Court will grant Defendant's Motion to Dismiss as to Count III.

### C. <u>Unjust Enrichment Claim (Count IV)</u>

Lastly, Defendant argues that Plaintiffs' unjust enrichment claim should be dismissed because the "parties do not dispute a valid life insurance contract was in force," which governs the relationship between the parties and the intended beneficiaries. (Def.'s Mem. in Supp. at 10.) Plaintiffs assert that the unjust enrichment claim is valid because unjust enrichment is not precluded where "a valuable performance has been rendered under a contract that is invalid, or subject to avoidance, or otherwise ineffective to regulate the parties' obligations." (Pls.' Mem. in Opp'n at 11.) Because USAA

allegedly canceled the Policy before the Insured's death, Plaintiffs contend the contract is "avoided or ineffective," allowing their unjust enrichment claim. (*Id.*)

"Unjust enrichment is an implied contract action based upon the principle that 'one person . . . may not enrich himself unjustly at the expense of another.'" *CGI Fed. Inc. v. FCi Fed., Inc.*, 814 S.E.2d 183, 190 (Va. 2018). A cause of action for unjust enrichment requires "one who accepts and receives goods, services, or money from another to make reasonable compensation for those services." *James G. Davis Constr. Corp. v. FTJ, Inc.*, 841 S.E.2d 642, 647 (Va. 2020). However, the Supreme Court of Virginia has acknowledged that unjust enrichment is not precluded where "a valuable performance has been rendered under a contract that is invalid, or subject to avoidance, or otherwise ineffective to regulate the parties' obligations." *Id.*

Here, Plaintiffs have not established what is required for a claim of unjust enrichment nor have they established that the Policy Agreement is invalid, subject to avoidance, or otherwise ineffective to regulate the parties' obligations. Neither the Insured nor Plaintiffs conferred a benefit on USAA for which they did not receive reasonable compensation. Plaintiffs argue that because the Policy was canceled early in a manner inconsistent with the Policy terms, the Insured's previously paid monthly premiums unjustly enriched USAA due to their refusal to pay out the death benefit proceeds to Plaintiffs as the intended beneficiaries. (Pls.' Mem. in Opp'n at 11–12.) This mischaracterizes the benefit conferred to USAA. While the Insured's life insurance policy was active with USAA, and he was making his monthly premium payments, the Insured was reasonably compensated by having a valid life insurance policy that could

12

have been paid out in the event of his death. Once the alleged policy cancelation was effective on August 4, 2020, USAA stopped withdrawing the monthly premium payments from the Insured's bank account, which eliminated any additional benefits being conferred on USAA by the Insured under the Policy.

Moreover, Plaintiffs have not alleged that the Policy Agreement was invalid or that the Agreement was ineffective in articulating the parties' respective obligations. In fact, Plaintiffs argue the opposite, asserting the Policy Agreement was valid at the time of the Insured's death and effectively controlled the obligations between the Insured and USAA. Consequently, Plaintiffs maintain that the death benefit proceeds should have been paid out under the Policy terms. Because neither USAA nor Plaintiffs dispute the validity of the contract prior to August 3, 2020, Plaintiffs could only seek compensation under unjust enrichment for benefits conferred after the alleged cancellation, not for the premium payments made over the last decade when the Policy was valid. Therefore, Plaintiffs have not established a claim for unjust enrichment, and the Court will grant Defendant's Motion to Dismiss as to Count IV.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Plaintiffs failed to sufficiently plead a claim for which relief may be granted as to Counts II, III, and IV. Consequently, Defendant's Motion to Dismiss (ECF No. 11) will be granted and Counts II, III, and IV will be dismissed without prejudice.

An appropriate Order will accompany this Memorandum Opinion.

                                                                        /s/  
                                            Henry E. Hudson  
                                            Senior United States District Judge

Date: Oct. 3, 2022  
Richmond, Virginia

14