IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

CAROLINE B. REYNOLDS, ALISON W.          )
REYNOLDS, and PAIGE A. REYNOLDS,         )
Individually and as Administrator of the )
Estate of John Paul Reynolds,            )
                                         )
              Plaintiffs,                )
                                         )
v.                                       )       Civil Action No. 3:22-cv-577–HEH
                                         )
USAA LIFE INSURANCE COMPANY,             )
                                         )
              Defendant.                 )

## MEMORANDUM OPINION
### (Resolving Cross-Motions for Summary Judgment)

This matter is before the Court on the parties' Cross-Motions for Summary

Judgment (ECF Nos. 40, 47),[1] filed on February 28, 2023.[2]  Plaintiffs Paige Reynolds,

Caroline Reynolds, and Alison Reynolds (collectively, "Plaintiffs") brought this lawsuit

challenging Defendant USAA Life Insurance Company's ("Defendant" or "USAA")

denial of John Paul Reynolds' (the "Insured") life insurance policy proceeds.  USAA

asserts that it was not required to pay out the proceeds of the Insured's life insurance

policy (the "Policy") because he contacted USAA directly and affirmatively canceled the

Policy before he died.  Plaintiffs argue that the Policy's grace period was still in effect at

---

[1] Each of the parties' individual summary judgment motions will be referred to as "Plaintiffs' Motion" or "Defendant's Motion."

[2] Plaintiffs' Complaint originally contained four counts.  (Compl., ECF No. 1-1.)  By Memorandum Opinion and Order (ECF Nos. 14, 15), this Court granted Defendant's Motion to Dismiss Counts II–IV.  Thus, only Plaintiffs' breach of contract claim under Count I remains.

the time of the Insured's death because he did not validly cancel the Policy.  The parties

have submitted extensive memoranda detailing their respective positions.  Oral argument

was heard on May 9, 2023.  For the following reasons, Defendant's Motion for Summary

Judgment will be granted, and Plaintiffs' Motion for Summary Judgment will be denied.

## I.   STANDARD OF REVIEW

The standard of review for cross-motions for summary judgment is well-settled in

the Fourth Circuit:

> On cross-motions for summary judgment, a district court should "rule upon
> each party's motion separately and determine whether summary judgment is
> appropriate as to each under the [Federal Rule of Civil Procedure] 56
> standard."  Summary judgment is appropriate only if the record shows "there
> is no genuine issue as to any material fact and that the movant is entitled to
> judgment as a matter of law."

*Norfolk S. Ry. Co. v. City of Alexandria*, 608 F.3d 150, 156 (4th Cir. 2010) (alteration in

original) (first quoting *Monumental Paving & Excavating, Inc. v. Pennsylvania Mfrs.*

*Ass'n Ins. Co.*, 176 F.3d 794, 797 (4th Cir. 1999), and then quoting Fed. R. Civ. P. 56(c)).

In reviewing cross-motions for summary judgment, the Court must consider each motion

separately on its own merits to determine if either party deserves judgment as a matter of

law.  *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (citations omitted).  In

considering each motion, the Court will resolve any factual disputes and "competing,

rational inferences" in the light most favorable to the opposing party.  *Id.* (internal

quotation marks and citation omitted).

The relevant inquiry in the summary judgment analysis is "whether the evidence

presents a sufficient disagreement to require submission to a [trier of fact] or whether it is

2

so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine factual dispute exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48 (emphasis in original). A material fact is one that might affect the outcome of a party's case. *Id.* at 248; *JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). A genuine issue concerning a material fact only arises when the evidence, viewed in the light most favorable to the non-moving party, is sufficient to allow a reasonable trier of fact to return a verdict in that party's favor. *Id.*

To defeat an otherwise properly supported motion for summary judgment, the non-moving party must rely on more than conclusory allegations, "mere speculation or the building of one inference upon another," or "the mere existence of a scintilla of evidence" concerning a material fact. *Stone v. Liberty Mut. Ins. Co.*, 105 F.3d 188, 191 (4th Cir. 1997) (first quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985), and then quoting *Anderson*, 477 U.S. at 252). Accordingly, to deny a motion for summary judgment, "[t]he disputed facts must be material to an issue necessary for the proper resolution of the case, and the quality and quantity of the evidence offered to create a question of fact must be adequate." *Thompson Everett, Inc. v. Nat'l Cable Advert., L.P.*, 57 F.3d 1317, 1323 (4th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). "Thus, if the

3

evidence is 'merely colorable' or 'not sufficiently probative,' it may not be adequate to oppose entry of summary judgment." *Id.* (quoting *Anderson*, 477 U.S. at 249–50). The Court cannot weigh the evidence or make credibility determinations in its summary judgment analysis. *See Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004).

## II.   BACKGROUND[3]

The following narrative represents the undisputed facts for the purpose of resolving the parties' cross-motions for summary judgment. On November 4, 2010, USAA issued a $1,000,000 twenty-year level term life insurance policy to the Insured. (Compl. ¶ 3.) The Policy initially required monthly premium payments of $121.65,[4] which the Insured set to automatically draft from his bank account each month. (Policy Agreement at 13, Ex. A to Compl., ECF No. 1-1.) At that time, the Insured designated Paige Reynolds ("Paige") as the Policy beneficiary. (*Id.*)

The Insured and Paige married on September 26, 1998, and had two children, Caroline B. Reynolds and Alison W. Reynolds. (Compl. ¶ 5.) On October 21, 2018, the Insured and Paige divorced, and their Property Settlement Agreement required the Insured to continue the Policy with Paige, Caroline, and Alison as designated beneficiaries. (*Id.* ¶ 6.) The Insured carried the Policy without interruption for nearly ten years. (*Id.* ¶ 10.)

---

[3] For record citations, the Court employs the pagination of its CM/ECF docketing system.

[4] The cost of the Policy's monthly premium in 2020 was $127.89. (Administrator's Letter at 41, Ex. F to Compl., ECF No. 1-1.)

According to the Policy, the Policy will be terminated at the earliest of the following events: (1) the Insured's death; (2) the grace period ends without receipt of required payment; (3) the policy is exchanged for a new policy; or (4) the expiration date of the policy. (Policy Agreement at 21.) The Policy also expressly provides for a "31-day grace period after the premium due date to pay each premium," and the Policy will remain "in effect during any grace period, unless terminated under another policy provision." (*Id.* at 23.) In the spring of 2020, in response to the COVID-19 pandemic, USAA offered additional relief to its members through different measures, including "cessation of policy 'cancellations for non-payment' and extended grace periods." (Compl. ¶ 7.)

On August 3, 2020, the Insured contacted USAA by phone and requested to cancel the Policy. (Phone Call Tr. at 2, Ex. G to Def.'s Mot., ECF No. 47-11.) During this call, the Insured stated, "I would like to cancel my Term Life Insurance." (*Id.*) The customer service agent responded by asking if the Insured wanted to consider reducing coverage instead of canceling. (*Id.* at 2–4.) When asked if he wanted to reduce coverage, the Insured responded, "let's skip that—let's just cancel it," and further stated that his children "have plenty of coverage" without the Policy so "I just don't need to pay the $127." (*Id.* at 4.) The customer service agent then advised the Insured that the following day, August 4, 2020, was his premium due date, so USAA "can cancel [the Policy] effective tomorrow." (*Id.*) "That'll stop the automatic payment, so we won't be drafting that payment tomorrow." (*Id.*) The Insured responded, "Perfect." (*Id.*)

5

Following this termination of the Policy, the customer service agent drafted and sent a letter to the Insured detailing that USAA canceled the Policy, effective August 4, 2020, and that USAA would no longer deduct "premium [monthly] payments of $127.89" from the Insured's bank account. (Policy Cancellation Letter at 45, Ex. H to Compl., ECF No. 1-1.) The last monthly premium paid by the Insured was on July 4, 2020. (Compl. ¶ 13.)

On August 17, 2020, the Insured died a resident of Henrico County, Virginia, and Paige qualified as Administrator of his Estate in the Henrico County Circuit Court. (*Id.* ¶ 8.) Thereafter, Paige demanded USAA pay the Policy proceeds. However, USAA refused and asserted the Policy was no longer active because the Insured previously canceled it. (*Id.* ¶ 9.) After USAA declined Paige's demand for the Policy proceeds, she filed a complaint with the Virginia Bureau of Insurance (the "VBI"). (Ex. U to Compl. at 2–7, ECF No. 47-23.) Paige alleged that USAA improperly canceled the Policy, that the Insured "died while the Policy was active (and during any payment grace period)," and therefore, that the proceeds should be payable. (*Id.*) VBI ultimately concluded that the Policy was properly canceled and that it would not direct USAA to provide the Policy proceeds, finding that "the policyholder, at any time during the term of the contract, is within his/her right to cancel the policy." (Ex. Z to Def.'s Mot. at 1, ECF No. 47-28.)

Following VBI's findings, Plaintiffs filed this civil action in the Henrico County Circuit Court on July 28, 2022, which was later removed by USAA to this Court on August 26, 2022. (Notice of Removal at 1, ECF No. 1.)

6

## III.   DISCUSSION

Plaintiffs essentially assert two main arguments as to why the Policy was still in effect at the time of the Insured's death.  First, pursuant to Virginia statutory law, the policy premium due date and grace period start date was actually August 3, 2020, not August 4, 2020, as provided for in the Policy, so the Policy's grace period could not be waived or canceled.  (Pls.' Br. in Supp. at 9–10, ECF No. 45.)  Second, Plaintiffs assert that the Insured's and USAA's cancelation of the Policy was not effective because it lacked consideration, there was no meeting of the minds, and no disclosure of material facts.  (*Id.* at 14, 18.)

Conversely, USAA argues that the Policy unambiguously established that the fourth day of each month determined the Policy's premium due date and grace period start date, and that Virginia statutory law does not disturb that.  (Def.'s Opp'n Br. at 4, ECF No. 53.)  Second, USAA maintains that Virginia law clearly provides two contracting parties the ability to mutually cancel an agreement, even if that agreement does not have a cancelation provision or if the agreement stipulates that any changes to the agreement must be in writing.  (*Id.* at 15.)  Therefore, USAA asserts that because the two parties canceled the Policy, there was no valid Policy in effect at the time of the Insured's death.  (*Id.*)

### A. Policy Premium Due Date and Grace Period Start Date.

Plaintiffs contend that because the Policy is "ambiguous" regarding when the Policy premium due date began, any doubt must be resolved in favor of the Insured.

7

(Pls.' Br. in Supp. at 12.)  Thus, they argue the Policy premium date should actually be construed to be on or before August 3, 2020, not August 4, 2020.[5]  (*Id.*)

"When a contract is clear and unambiguous, it is the court's duty to interpret the contract, as written." *Palmer & Palmer Co., LLC v. Waterfront Marine Const., Inc.*, 662 S.E.2d 77, 80 (Va. 2008) (citing *Winn v. Aleda Const. Co.*, 315 S.E.2d 193, 194 (Va. 1984)).  If the plain meaning of an insurance contract is undiscoverable, courts must construe "ambiguities against the drafter of the ambiguous language." *Erie Ins. Exch. v. EPC MD 15, LLC*, 822 S.E.2d 351, 355 (Va. 2019) (internal citations omitted.) "Contract language is ambiguous when it may be understood in more than one way or when it refers to two or more things at the same time." *Robinson-Huntley v. George Washington Carver Mut. Homes Ass'n, Inc.*, 756 S.E.2d 415, 416 (Va. 2014) (internal quotations omitted).  "A contract is not ambiguous merely because the parties disagree as to the meaning of the terms used." *Id.*

Here, the Court finds that there is no doubt or ambiguity to be resolved in the Insured's favor because the Policy is abundantly clear about when the Policy premium due date began.  The Policy defines "Effective date" as "the date on which coverage starts." (Policy Agreement at 19.)  The Policy's "Effective date" was November 4, 2010. (*Id.* at 13.)  The Policy's "Effective date" definition further explains that "*[p]remium due dates*, policy months, years and anniversaries are measured from this date." (*Id.*

---

[5] Because the Policy provides that the 31-day grace period shall start "after the premium due date to pay each premium after the Initial Premium," the calculation of the premium due date controls the grace period start date.  (Policy Agreement at 23.)

(emphasis added).)  Based on the Policy's "Effective date" definition, because the Policy coverage expressly began on November 4, 2010, the Policy unambiguously provides that "premium due dates" from that point forward will be calculated from the fourth day of each month.  The fourth day of each month was also the day that the premiums were set to automatically deduct from the Insured's bank account.  (Policy Agreement at 14.)  Therefore, the Court concludes that there is no ambiguity to construe against USAA, as the Policy unambiguously identifies that USAA calculated the premium due date at issue here as August 4, 2020.

Alternatively, Plaintiffs argue that notwithstanding any ambiguity in the Policy's provisions, Virginia statutory law requires that the premium due date in this case be calculated as August 3, 2020, not August 4, 2020.  (Pls.' Br. in Supp. at 10.)

Plaintiffs' theory is premised on Virginia Code §§ 38.2-3302 and 38.2-3303. Virginia Code § 38.2-3302 states, "[e]ach individual life insurance policy shall have a provision that all premiums after the first premium shall be payable in advance." According to Plaintiffs, the statute's "shall be payable in advance" language requires that the premium due date be calculated to August 3.  (Pls.' Br. in Supp. at 11.)  Otherwise, Plaintiffs contend that an August 4 premium due date would clearly violate the statute. (*Id.*)  Additionally, Plaintiffs argue that because Virginia Code § 38.2-3303 also states that "[t]he grace period shall start on the premium due date" and "during the grace period, the policy shall remain in full force," the grace period had already started when the Insured called to cancel the Policy and he could not waive the grace period protections.

9

(Pls.' Br. in Supp. at 10.)  This position as to both arguments is a distorted interpretation of Virginia law.

First, "when a statute is clear and unambiguous, 'a court may look only to the words of the statute to determine its meaning.'" *Eberhardt v. Fairfax Cnty. Empl. Ret. Sys. Bd. of Trs.*, 721 S.E.2d 524, 526 (Va. 2012) (quoting *Hubbard v. Henrico Ltd. P'shp*, 497 S.E.2d 335, 337 (Va. 1998)).  Looking at the statutory text alone, it is evident that the Virginia General Assembly intended the pertinent language in Virginia Code § 38.2-3302 to be permissive, not mandatory.  Section 38.2-3302 states that "[e]ach individual life insurance policy shall have a provision that all premiums after the first premium shall be *payable* in advance."  The operative language states that premiums shall be "payable" in advance, not "paid" in advance.  It seems clear the Virginia General Assembly intended for life insurance policyholders to have flexibility in paying monthly premiums by allowing premium payors to pay in advance of their policy's due date should they choose to do so.  Moreover, the Policy at issue here states that "[p]remiums are payable in advance" and allows for premiums to be paid "on or before their due date."[6]  (Policy Agreement at 22.)  Thus, the Court finds Plaintiffs' interpretation of Virginia Code §§ 38.2-3302 and 38.2-3303 unpersuasive, and the Court concludes that the plain language of the statute does not require monthly premiums to be paid in advance of their due dates.

---

[6] Although not dispositive or binding on this Court, the Court does note that USAA submitted the Policy form used in this case to the VBI for approval.  (ECF No. 47-7.)  The VBI found that the Policy provisions complied with Virginia statutory law.  (*Id.*)

Additionally, the Court finds the case of *Moll v. Pruco Life Insurance Company* instructive here.  No. 1:14-CV-1040, 2016 WL 759125, at *1 (M.D. Pa. Feb 26, 2016), *aff'd* 689 F. App'x 114 (3d Cir. 2017).  Like in Virginia, Pennsylvania requires life insurance policies to have a provision that "all premiums shall be payable in advance." *Id.* at *4.  The beneficiary of the life insurance policy at issue in *Moll* argued that the Pennsylvania statute's language required a strict interpretation of "must be paid" in advance.  *Id.* ("According to [plaintiff's] interpretation, 'all premiums shall be payable in advance' translates to 'all premiums *must be paid* in advance.'" (emphasis in original)).

The *Moll* court disagreed with the plaintiff and concluded "[l]ogically, a permissive interpretation best effectuates the legislature's intent."  *Id.* at *5.  The court reasoned that interpretive principles require that every statute be construed, if possible, to give effect to all of its provisions.  *Id.* at *4.  The court explained, "the Pennsylvania legislature cannot have intended a strict definition of payable" because "the Insurance Act's grace period provision expressly sanctions late payments."  *Id.* at *5 (quoting Pa.C.S. § 510(b)).  Thus, the court found that "[t]he strict construal of the 'payable in advance' provision" would nullify the grace period provision "through its rigid directive that '*all* premiums *must be paid* in advance.'"  *Id.* (emphasis in original).  Because this strict interpretation would violate the "overarching command that a statute must be construed 'to give effect to all its provisions'" the court concluded the permissive interpretation best effectuated the legislature's intent.  *Id.*

Here, Virginia Code § 38.2-3302 contains almost identical language to the Pennsylvania statute, and Plaintiffs' position is nearly the same as the plaintiff's

11

argument in *Moll*. The Court finds the *Moll* court's reasoning persuasive. The Virginia General Assembly seemingly intended a more permissive reading, providing flexibility to policyholders to pay premiums in advance if they so choose, not *requiring* them to pay in advance. Thus, Virginia Code § 38.2-3302 should not be read to have required the Insured to make the Policy payments in advance of the August 4 premium due date, only that he could have if he chose to.

Second, Plaintiffs' argument that the grace period had begun by the time the Insured contacted USAA on August 3 to cancel his Policy is also unavailing. Plaintiffs assert that USAA simply did not know or acknowledge that the grace period already started when the Insured spoke with the customer service agent over the phone. (Pls.' Br. in Supp. at 11.) Therefore, Plaintiff contends that even if the Insured requested to cancel on August 3, because the grace period had already begun, the Insured could not waive the grace period protection and the parties were unable to cancel. (*Id.*)

Virginia Code § 38.2-3303 establishes and controls grace periods. Section 38.2-3303(B) states "[t]he grace period shall start on the premium payment due date." Plaintiffs contend that this language, when paired with their argument that the premium due date was actually August 3, means that the grace period had already started by the time the Insured contacted USAA to cancel his Policy. (Pls.' Br. in Supp. at 11–12.) Because they argue that grace periods are statutorily mandated protections for policyholders under Virginia law for policyholders, neither of the contracting parties can waive these protections once the grace period commences. However, as mentioned previously, the Policy's premium due date was August 4. Therefore, the grace period had

12

not begun on August 3 when the Insured canceled his policy.  Nonetheless, Plaintiffs' argument still fails.

Plaintiffs point out that no Virginia court has ever addressed a purported cancelation after a grace period has already commenced, but they argue that *Satery v. Great Amer. Ins. Co.*, 278 S.W.2d 377 (Tex. Ct. App. 1955) is persuasive.  There, the insured wrote the insurance company during the policy grace period allegedly requesting to cancel her life insurance policy.  *Id.* at 380.  The insured then died within the remaining grace period, and the insurance company denied coverage, alleging that the cancelation request ended the grace period coverage.  *Id.*  The court held that the grace period could not be "nullified in advance by the parties to the insurance contract, nor waived subsequently by mutual consent of the parties, unsupported by consideration." *Id.* at 380.

Even without articulating possible differences between Texas and Virginia contract law, *Satery* is distinguishable from the case at hand for multiple reasons.  First, *Satery* differs on the simple fact that the grace period in that case had clearly already begun before the plaintiff contacted the insurance company to "drop her insurance coverage." *Id.*  She wrote the insurance company nearly a week after the insurance company contacted her to let her know that her policy lapsed due to nonpayment. *Id.* Here, the grace period had not started, and the Insured contacted USAA for the very purpose of canceling the Policy before the payment was due on the premium due date.

Second, the *Satery* court did not construe the letter the insured wrote to the insurance company as an affirmative cancelation or waiver of her grace period protection

13

rights. *Id.* Instead, the court reasoned that the insured "merely advised the Company she was not intending to pay any more premiums on the policy." *Id.* That distinction is important because it did entitle her to the protections of the grace period because the grace period had commenced for *nonpayment* of premiums, not because she contacted to affirmatively cancel her policy beforehand.

Here, the Insured unquestionably intended to cancel the Policy with USAA. On the call, the Insured clearly stated, "I would like to cancel my Term Life Insurance." (Phone Call Tr. at 2.) The agent then advised "so what we can do is we can cancel it effective tomorrow. That'll stop the automatic payment, so we won't be drafting that payment tomorrow," to which the Insured responded, "Perfect." (*Id.* at 4.) This cannot be construed as the Insured simply advising USAA that he intended to stop paying premiums as was the case in *Satery*.

Accordingly, both of Plaintiffs' arguments regarding the Policy's premium due date and grace period start date are unavailing, and the Court will not grant their Motion for Summary Judgment on that basis.

### B. Oral Cancelation Between the Parties.

USAA's main contention is that the Policy proceeds were not owed because the Insured and USAA mutually agreed to cancel the Policy between them prior to the premium due date and grace period commencement. (Def.'s Br. in Supp. at 3, ECF No. 48.) Thus, even if the Court concluded that the Policy's termination provisions were the only means of canceling the Policy, the parties still had authority under Virginia law to agree orally and mutually to cancel the Policy. (*Id.* at 6.)

Conversely, Plaintiffs argue that the cancelation of the Policy lacked adequate consideration and therefore should be set aside. (Pls.' Br. in Opp'n at 12, ECF No. 54.) Additionally, because both USAA and the Insured did not know "the actual premium due date for the Policy or that the Grace Period had already started at the time of the cancelation," Plaintiffs argue that there was not a meeting of the minds when the Insured contacted USAA to cancel the Policy. (*Id.* at 16.) Essentially, Plaintiffs argue there was a mutual mistake of fact, and therefore, the cancelation should be set aside. The Court finds that neither of Plaintiffs' arguments are persuasive or a correct interpretation of the law, and that the Insured and USAA validly canceled the Policy between them.

<u>i. There was adequate consideration for the parties to cancel their agreement.</u>

It is elementary that any valid contract requires offer, consideration, acceptance, and a determination of the "objectively manifested" intent of the parties to form a contract. *Montagna v. Holiday Inns, Inc.*, 269 S.E.2d 838, 844 (Va. 1980). Here, Plaintiffs assert that there was no adequate consideration to form an agreement between the Insured and USAA. In *Britton & Kennedy v. Terry*, the Virginia Supreme Court addressed whether the cancelation of a contract that lacked a cancelation provision was valid. 107 S.E. 687 (Va. 1921). The Virginia Supreme Court held that the contract in question was canceled by mutual consent and "agreement of both parties thereto admits no doubt under the evidence in the case. The cancellation, being an executed agreement, avoided and put an end to the contract, and *it required, as is well settled, no other consideration to support the cancellation.*" *Id.* at 693 (emphasis added). Thus, it appears

15

under Virginia law that nothing other than a mutual release of obligation is required for the cancelation of a contract by mutual consent and agreement.

To the extent consideration is required, "'[c]onsideration is, in effect, the price bargained for and paid for a promise. It may be in the form of a benefit to the party promising or a detriment to the party to whom the promise is made.'" *Smith v. Mountjoy*, 694 S.E.2d 598, 602 (Va. 2010) (quoting *Dulany Foods, Inc. v. Ayers*, 260 S.E.2d 196, 202 (Va. 1979)). A "very slight advantage to one party or a trifling inconvenience to the other is generally held sufficient to support the promise." *Ayers*, 260 S.E.2d at 202. Essentially, consideration can be either a benefit or a detriment to either party. *Smith*, 694 S.E.2d at 602. Further, "it is well established that mutual promises in a contract constitute valuable consideration." *Price v. Taylor*, 466 S.E.2d 87, 88 (Va. 1996) (collecting cases).

Here, the Court agrees with USAA that the parties exchanged mutual promises which constitute valuable consideration—USAA promised to cancel the Insured's Policy upon his request and stop carrying the risk of the Policy, and the Insured would cease paying monthly premiums. The mutual exchange of promises is sufficient consideration. *See Sfreddo v. Sfreddo*, 720 S.E.2d 145, 153–54 (Va. 2012) ("An offer identifies the bargained for exchange." (internal quotations omitted)). The Insured's offer was accepted by USAA. The parties mutually agreed to cancel the Policy with an effective date of August 4, 2020. That cancelation was supported by adequate consideration. The Policy's cancelation was a benefit to the Insured based on his clearly expressed intent and desire to cancel his Policy at the earliest convenience. The Insured obtained the

16

cancelation and cessation of premium payments that he wanted, prior to the date he wanted it—August 4, 2020. It is clear that there was adequate consideration for the parties' valid cancelation of the agreement between them.

### ii. There was no mutual mistake of fact between USAA and the Insured.

Plaintiffs also assert that there was no requisite meeting of the minds between the Insured and USAA because they "did not even know an actual premium due date for the Policy or that the Grace Period had already started" at the time of the Insured's call with USAA. (Pls.' Br. in Supp. at 18.) Therefore, Plaintiffs claim the cancelation should be set aside as a mutual mistake of fact. (*Id.*) Defendant argues that there was simply no mutual mistake of fact, and the cancelation correctly embodies the intentions of the parties. (Def.'s Opp'n Br. at 28.) The Court agrees with USAA.

"[M]utuality of assent—the meeting of the minds of the parties—is an essential element of all contracts." *Phillips v. Mazyck*, 643 S.E.2d 172, 175 (Va. 2007); *see also Hertz Corp. v. Zurich Am. Ins. Co.*, 496 F. Supp. 2d 668, 676 (E.D. Va. 2007) ("The base-line requirement for finding the existence of a contract, written, oral, implied, or otherwise, is a showing of mutual assent at the time of the agreement . . . ."). In order for the requisite mutuality to exist, "'it is necessary that there be a proposal or offer on the part of one party and an acceptance on the part of the other.'" *Lacey v. Caldwell*, 217 S.E.2d 835, 844 (Va. 1975) (quoting *Green's Ex'rs v. Smith*, 131 S.E. 846, 848 (Va. 1926)). "'Both the offer and acceptance may be by word, act or conduct which evince the intention of the parties to contract, and that their minds have met may be shown by

direct evidence of an actual agreement, or by indirect evidence of facts from which an agreement may be implied.'" *Id.*

Here, there was no mutual mistake regarding the Insured's cancelation of his Policy with USAA. As already mentioned, USAA was administering the Policy from the correct premium due date and grace period start date, and the Insured was also aware of the Policy premium due date evidenced by him contacting USAA the day before the next premium monthly payment was to be automatically withdrawn from his bank account. As pointed out by USAA, the cancelation "'correctly embod[ies] the intention of the parties;' named, cancellation of the Policy." (Def.'s Opp'n Br. at 28 (quoting *Dickenson Cnty. Bank v. Royal Exch. Assurance of London*, 160 S.E. 13, 16 (Va. 1931)).) The Insured received exactly what he wanted—cancelation of his Policy—which relieved USAA from the liability of insuring the risk of the Insured's Policy. Therefore, because there was a clear meeting of the minds, the Court finds that no mutual mistake of fact exists, and Plaintiffs' Motion will not be granted on this basis.

## IV.   CONCLUSION

In sum, the Court agrees with USAA that it and the Insured had the ability under Virginia law to orally cancel the Policy, and the Insured unambiguously intended the Policy to be canceled. Furthermore, USAA was administering the Policy in accordance with Virginia statutory law. Therefore, for the foregoing reasons, the Court will grant Defendant's Motion and deny Plaintiffs' Motion.

18

An appropriate Order will accompany this Memorandum Opinion.

/s/

Henry E. Hudson
Senior United States District Judge

Date: June 22, 2023
Richmond, Virginia